**Mercy EDWIN, Plaintiff,**

v.

**BLENWOOD ASSOCIATES, INC., Defendant.**

**Civil Action No. 98–10279–WGY.**

United States District Court, D. Massachusetts.

June 19, 1998.

David B. Wilson, Robinson & Cole, Boston, MA, Jeffrey L. Hirsch, Peter J. Moser, Robinson & Cole, Boston, MA, for Defendant.

*MEMORANDUM AND ORDER*

YOUNG, District Judge.

This employment discrimination suit filed by Mercy Edwin ("Edwin") against her former employer, Blenwood Associates, Inc. ("Blenwood"), alleges violation of Mass.Gen. Laws ch. 151B, § 4 and 42 U.S.C. § 1981 consisting of racial harassment by co-employees, race discrimination in the terms and conditions of employment, and unlawful retaliation. Blenwood moves to dismiss Edwin's claim of retaliation in violation of Mass. Gen.Laws ch. 151B, § 4(4) ("Chapter 151B") on the ground that such claim and allegations were not raised in her administrative complaint filed with the Massachusetts Commission Against Discrimination ("MCAD").

## JURISDICTION

This Court's subject matter jurisdiction is based on diversity of citizenship as to all Counts of Edwin's Complaint. Edwin is a resident of the State of New Hampshire. Blenwood is a corporation whose place of incorporation is the Commonwealth of Massachusetts. Edwin avers that the amount in controversy exceeds $75,000.00. Moreover, Count I of Edwin's complaint is based on federal question jurisdiction and, therefore, jurisdiction over her state law claims is conferred by supplemental jurisdiction pursuant to 28 U.S.C. § 1367.

## STANDARD OF REVIEW

In ruling on a motion to dismiss for failure to state a claim upon which relief can be granted, this Court is to accept the factual allegations in the complaint as true and construe them in the light most favorable to the plaintiff. "A complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957); *see also Roy v. Augusta, Maine,* 712 F.2d 1517, 1522 (1st Cir.1983).

As a general rule, a court is to consider only the pleadings in rendering a decision on

Matthew Cobb, Law Firm of Matthew Cobb, Boston, MA, Paul F. Wood, Law Office of Paul F. Wood, Boston, MA, for Plaintiff.

a Rule 12(b)(6) motion to dismiss. If the court considers evidence outside of the pleadings, the motion is converted to a motion for summary judgment. Fed.R.Civ.P. 12(b). The First Circuit has adopted a practical exception to this rule. *Beddall v. State Street Bank and Trust Co.*, 137 F.3d 12 (1st Cir.1998). Under this exception, "[w]hen ... a complaint's factual allegations are expressly linked—and admittedly dependent upon— a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)." *Beddall*, 137 F.3d at 17. In this case, the MCAD complaint or charge is referenced in Edwin's Amended Complaint and its content determines the parameters of her civil complaint. Therefore, this Court may consider the MCAD complaint in making its decision on this motion without converting the matter into a summary judgment proceeding.

**FACTUAL BACKGROUND**

Taking all of the asseverations in Edwin's Complaint as true, the relevant facts for this motion are as follows.

Edwin is a black woman who is originally from Ghana, West Africa. She is now a United States Citizen. She began working for Blenwood as a licensed practicing nurse ("LPN") in June 1995. As an LPN she was responsible for the supervision of Certified Nursing Assistants ("CNAs") who are responsible for attending to the physical health and personal needs of patients. Two of the CNAs under Edwin's supervision were Fern Stokes ("Stokes") and Maureen Fitzgerald ("Fitzgerald"). Both Stokes and Fitzgerald are white women.

From the beginning of Edwin's tenure at Blenwood, Stokes and Fitzgerald openly disregarded her instructions concerning the care of patients. Along with such insubordination, Stokes and Fitzgerald used racial and ethnic slurs to refer to Edwin. They referred to her as "that fat Nigger," "Voodoo Nurse," and "Nigger Nurse." In addition, they warned other CNAs supervised by Edwin that she was prejudiced and to avoid her. Ultimately, because of this continuous conduct, Edwin requested that the Director of

Nursing, Edie Domain ("Domain"), hold a staff meeting with Edwin and all of the CNAs under Edwin's supervision. This meeting was held on December 21, 1995. At this meeting, Edwin informed Domain of Stokes' and Fitzgerald's conduct. She told Domain that Fitzgerald and Stokes were not insubordinate to the white LPN who worked Edwin's shift when Edwin was off-duty. She also complained about the "racial tension" which was prevalent on the floor. Despite confirmation by two Latina CNAs of Stokes' and Fitzgerald's statements that Edwin was prejudiced and that they should stay away from her, no disciplinary action was taken against Stokes and Fitzgerald.

In January, 1996, Tina O'Sullivan ("O'Sullivan"), a white woman, was hired as the new Director of Nursing. The insubordination and racial slurs of Stokes and Fitzgerald towards Edwin continued. Unlike the prior Director of Nursing, O'Sullivan did not side with Edwin against Stokes and Fitzgerald regarding her legitimate instructions to them about patient care. In addition, she refused to place written warnings issued by Edwin to Stokes or Fitzgerald in their personnel files.

On or about April 4, 1996, Edwin met with Tracy Wood ("Wood"), the Assistant Director of Nursing. At this meeting, she informed Wood of Stokes' and Fitzgerald's continuing insubordination, making of racial and ethnic slurs, and the racial tension in the unit due to their conduct. Throughout the month of April, Edwin continued to report to Wood specific racially harassing conduct by Fitzgerald and Stokes, but no action was taken against Stokes or Fitzgerald. On May 5, 1996, Edwin was terminated de facto from her employment. Her name was permanently removed from the work schedule and another LPN was hired to work her shift.

On July 1, 1996, she filed *pro se* a complaint with the MCAD against Blenwood. In her complaint, she charged Blenwood with unlawful discrimination in employment on the basis of race, color, and national origin in violation of Chapter 151B and Title VII. Specifically, she alleged 1) that she was subjected to a hostile work environment due to the racial and ethnic slurs of two white CNAs; and 2) that O'Sullivan encouraged and sup-

ported this racially hostile work environment. Moreover, Edwin stated that on April 22, 1996, she reported the Blenwood Nursing Home to the Board of Health for patient neglect and abuse and the failure of the Director of Nursing (i.e., O'Sullivan) to take the appropriate action to address such conduct. On May 5, 1996, she was removed from the work schedule and has never been rescheduled.

## DISCUSSION

Blenwood does not argue that the facts as alleged fail to state a retaliation claim under chapter 151B; rather, Blenwood argues that Edwin is barred from making this claim because she never alleged such retaliation in her MCAD complaint. In opposition, Edwin avers that she included a retaliation claim in her MCAD complaint and that her retaliation claim was within the scope of the MCAD's investigation.

■ A civil complaint for employment discrimination is confined to the content of the charge filed with MCAD **and** claims reasonably within the scope of an MCAD investigation based on this claim. *Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir. 1996) (quoting *Powers v. Grinnell Corp.*, 915 F.2d 34, 38 [1st Cir.1990] ) (emphasis added). Thus, the inquiry for the Court is whether Edwin's retaliation claim reasonably was within the scope of MCAD's investigation of her administrative charge. The purpose of the administrative charge filing requirement is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Id.* (citations omitted). Also, it provides MCAD with the requisite information to structure its investigation. The MCAD regulations require a complainant to include the following information in her MCAD complaint:

1. Appropriate identification of the Complainant(s) and the person(s) alleged to have committed unlawful discriminatory acts;

2. The date(s) on which such unlawful discriminatory acts occurred; or, where such acts are of a continuing nature, the period of time during which acts occurred;

3. A concise statement of the alleged discriminatory acts.

804 C.M.R. § 1.03(4).

■ Both parties focus on the following language of Edwin's MCAD charge to support their position:

"I believe I was wrongfully terminated in retaliation for my action against the agency, in addition to the existing racial conflicts I was subjected to by the agency."

Blenwood emphasizes the first part of the sentence, arguing that Edwin's statement of retaliation only refers to her alleged wrongful termination for reporting Blenwood to the Department of Health. In contrast, Edwin emphasizes the second clause of the sentence, arguing that Edwin considered her termination retaliation for "the existing racial conflicts I was subjected to." Pl.'s Opp'n Mem. at 4. This parsing of the sentence is a grammatical stretch. Although a court is to give a liberal reading to *pro se* filings, *Lattimore*, 99 F.3d at 464, Edwin's interpretation reads the clause without reference to the rest of the sentence and the surrounding statements. This sentence is the concluding sentence of a paragraph in which Edwin 1) makes her charge of unlawful discrimination; 2) describes the racially harassing conduct of her co-workers and supervisor; 3) discusses the failure of the supervisor to take any remedial action against such discrimination; 4) discusses her reporting of Blenwood to the Department of Health; 5) states her subsequent removal from the work schedule; and 6) concludes. In context, the concluding sentence does not state a cause of action for retaliation under Mass.Gen.Laws ch. 151B, § 4(4) but a cause of action for the wrongful termination under the public policy exception to at-will employment.[1]

---

1. Under the public policy exception, "[r]edress is available for employees who are terminated for asserting a legally guaranteed right (e.g., filing workers compensation claim), for doing what the law requires (e.g., serving on a jury) or for refusing to do that which the law forbids (e.g., com-

mitting perjury)." *Wright v. Shriners Hosp. for Crippled Children*, 412 Mass. 469, 472, 589 N.E.2d 1241 (1992). Massachusetts law requires health professionals to report patient neglect or abuse. Mass.Gen.Laws ch. 111, § 72G; *see also* 105 C.M.R. § 155.001 *et seq.* Thus, Edwin ap-

■ Even though this Court does not adopt Edwin's reading of the MCAD charge, this does not result in the conclusion that Edwin's retaliation claim is beyond the scope of the MCAD charge. Blenwood rightly argues that the purpose of the administrative charge requirement in Chapter 151B is "to provide the employer with prompt notice of the claim and to create an opportunity for early conciliation." *Lattimore*, 99 F.3d at 464. Blenwood is incorrect, however, in reading this purpose as requiring "literary exactitude" in the MCAD charge and exact correlation between the claims expressly stated in the MCAD charge and the subsequent civil complaint. "An administrative charge is not a blueprint for the litigation to follow ... [T]he exact wording of the charge of discrimination need not presage with literary exactitude the judicial pleadings which may follow.... Rather, the critical question is whether the claims come within the scope of the [MCAD] investigation which can reasonably be expected to grow out of the charge of discrimination." *Powers*, 915 F.2d at 38–39 (internal quotations and citations omitted).

Blenwood relies on the First Circuit's opinion in *Lattimore* to support its position that the retaliation claim is beyond the scope of the charge. In *Lattimore*, the court held that the plaintiff's claims of racial harassment in violation of Chapter 151B and Title VII were barred because the claims were beyond the scope of the administrative charge filed by the plaintiff. The claim was beyond the scope of the MCAD complaint because the facts and events underlying the racial harassment claim were not alleged in the MCAD complaint. In the MCAD complaint, the plaintiff alleged race and handicap discrimination regarding the terms and conditions of employment. The court concluded that such discrimination is distinct from employment discrimination based on race and, therefore, facts sufficient to support each

form of discrimination must be pled in the MCAD complaint in order to file a civil complaint alleging both forms of employment discrimination. *Lattimore*, 99 F.3d at 463–64. Finding that the harassment claims were based on different facts than the job status discrimination claims, the court concluded that the plaintiff was barred from averring a harassment claim in his civil complaint, as this claim was not reasonably within the scope of MCAD's investigation of his discrimination charge. *Id.*[2]

A retaliation claim is distinct from a hostile work environment claim. Under Chapter 151B, a retaliation claim is viable only where retaliatory conduct is due to plaintiff's opposition to any practice forbidden by Chapter 151B. *See MacCormack v. Boston Edison Co.*, 423 Mass. 652, 662, 672 N.E.2d 1 (1996). Here, the protected activity engaged in was informing her supervisors of the racial harassment by Fitzgerald and Stokes, i.e., opposing discriminatory conduct. The subsequent adverse employment action was her termination.

■ In this case, unlike in *Lattimore*, some of the same set of facts that support Edwin's hostile work environment claim support her retaliation claim, as this conduct was the basis for her engaging in the protected activity of discussing the racial harassing conduct with her supervisors. When MCAD was investigating this racially harassing conduct and the complicity of O'Sullivan in such conduct, MCAD reasonably could be expected to investigate the facts and circumstances surrounding such conduct, including retaliatory behavior. The purpose of the MCAD charge is to initiate the investigation, "not to state sufficient facts to make out a prima facie case." *Powers*, 915 F.2d at 38 (quoting *Graniteville Co. v. Equal Employment Opportunity Comm'n*, 438 F.2d 32, 38 [4th Cir.1971]).

---

pears to have a meritorious wrongful termination claim.

2. The fact that the plaintiff, like Edwin, was *pro se* at the time of his filing of the MCAD complaint did not release him from the requirement of "describ[ing] the essential nature of the claim

and to identify the core facts on which it rests." *Lattimore*, 99 F.3d at 464. "Nor does it entitle the complainant to make a specific claim based on one set of facts and, later, *assert an entirely different claim based on a different and unrelated set of facts.*" *Id.* (citing *Pickney v. Am. Dist. Tel. Co.*, 568 F.Supp. 687, 690 (E.D.Ark.1983.)).

Generally, the "scope of the charge" analysis focuses on the potential investigation that the administrative agency could have conducted based on the charge and not the actual investigation. *See Powers,* 915 F.2d at 39 & n. 4. In this instance, the actual investigation embraced the issue that is the basis of Count III of Edwin's Amended Complaint. In a memorandum recommending the dismissal of the complaint in response to Edwin's notice of withdrawal, the MCAD investigator describes the issues investigated as:

> Whether Complainant was harassed in, and terminated from, employment because of her race/color, Black, national origin, African, and retaliation, in violation of Mass.Gen.Laws ch. 151B, 4(1, 4) and Title VII.

Recommendation for Dismissal of Complaint, Pl.'s Opp'n. Def.'s Mot. Dismiss, as Ex. C.

This evidence further bolsters this Court's conclusion that Edwin's retaliation claim is not barred because it is reasonably within the scope of the MCAD investigation of her charge. *Cf. Lattimore,* 99· F.3d at 464 (finding support for its conclusion that plaintiff's racial harassment claim was beyond the scope of the MCAD charge in "the MCAD's Notice of Final Disposition which indicates that, in fact, its investigation did not extend to any alleged harassment by [plaintiff's supervisor]").

Blenwood's claim that the scope of the charge does not embrace the Chapter 151B retaliation claim imposes a degree of precision in the drafting of the administrative charge not required by the First Circuit. Blenwood's reference to two Massachusetts Superior Court decisions, which dismiss employment discrimination claims due to insufficient particularity in the MCAD charge, is unavailing. In *Belonni v. Reservoir Nursing Ct.,* No. 907558, 1994 WL 879457 at *4 (Mass.Super.Ct. Jan. 18, 1994) (McHugh, J.), the plaintiff, with assistance of counsel, charged retaliatory discharge in her MCAD complaint but failed to state a handicap discrimination claim. In *Riebold v. Eastern Casualty Ins. Co.,* No. 9700306, 1997 WL 311523 at *4 (Mass.Super.Ct. June 4, 1997) (Brassard, J.), the court dismissed the sex discrimination claim because the plaintiff "did not give the particulars as required by the statute and the complaint form" regarding relevant facts. *But see Burke v. Raytheon Co.,* No. 923328, 1993 WL 818702 at *4 (Mass.Super.Ct. Nov. 30, 1993) (Butler, J.) (holding that the inclusion of an age discrimination claim, not explicitly stated in the MCAD charge, in the civil complaint was permissible when based on the same predicate facts). Neither case compels a conclusion in favor of Blenwood, because adherence to the "scope of the charge rule" articulated by the First Circuit in *Lattimore* and *Powers* is consistent with the purposes of the MCAD administrative charge.

## CONCLUSION

As Edwin's retaliation claim reasonably can be expected to have been within the scope of the MCAD investigation of her charge, this Court **DENIES** Blenwood's Motion to Dismiss Count III of Edwin's Amended Complaint.