Clarice A. SILVA and Alcides
Silva, Plaintiffs,

v.

HIT OR MISS, Avon Trading Corporation and Union of Needletrades, Industrial and Textile Employees, AFL–CIO, CLC, Defendants.

No. 98–11298–JLT.

United States District Court,
D. Massachusetts.

Aug. 23, 1999.

down her pants, Hit or Miss fired her in December 1995.

Silva filed complaints ·with the Massachusetts Commission Against Discrimination ("MCAD") and the Equal Employment Opportunity Commission ("EEOC"), claiming, *inter alia,* that Hit or Miss fired her because of her deafness. In October 1996, the MCAD dismissed her complaint for lack of probable cause, and the EEOC adopted the MCAD's conclusion.

Silva and her husband filed this federal court complaint on August 6, 1998, naming as Defendants Hit or Miss, Avon Trading Corp. ("Avon") (presumably Hit or Miss's corporate parent), and the Union of Needletrades, Industrial and Textile Employees, AFL–CIO ("Union") (Clarice Silva's union).

Against Hit or Miss and Avon the Silvas filed contract and tort claims, federal and state law discrimination claims, and a loss of consortium claim. Against the Union the Silvas claimed failure to fairly and impartially represent Clarice in her grievance against Hit or Miss and Avon.

Pending are (1) the motions to dismiss of Defendants Hit or Miss and Avon; and (2) Defendant Union's unopposed motion for summary judgement. For reasons discussed below, the motion to dismiss is ALLOWED in part, and the summary judgement motion is ALLOWED in its entirety.

Schwartz & Brennan, P.C., Sara Goldsmith Scwartz, Andover, MA, for Hit or Miss, Inc.

Malcolm J. Barach, Barach & Barach, P.C., Brockton, MA,. for plaintiffs.

*MEMORANDUM*

TAURO, District Judge.

Plaintiff Clarice Silva—who is allegedly deaf and a minority—began working in Defendant Hit or Miss's Warehouse in August 1992. After claiming to have caught Silva on videotape stuffing a garment

# I. ANALYSIS

## A. Hit or Miss and Avon's Motion to Dismiss

Hit or Miss and Avon make persuasive arguments to eliminate several of the claims. against them.

### 1. Count 1—Breach of Contract

██ A collective bargaining agreement ("CBA") covered Clarice Silva's employ, and allowed termination only for "just cause." Silva alleges her firing was unjustified. That claim has its basis in the

CBA. The claim is therefore preempted by § 301 of the Labor Management Relations Act ("LMRA"). *See, e.g., Quesnel v. Prudential Ins. Co.*, 66 F.3d 8, 10–11 (1st Cir.1995) (301 preempts claim whose resolution "necessitates analysis of, or substantially depends upon the meaning of the [collective bargaining agreement]").

Silva cannot resurrect her contract claim as a § 301 claim, because the six month statute of limitations period passed in May 1996. *See DelCostello v. International Brotherhood of Teamsters*, 462 U.S. 151, 169, 103 S.Ct. 2281, 76 L.Ed.2d 476 (1983) (six month statute of limitations). The contract claim thus fails.

### 2. Count 2—Breach of Covenant of Good Faith and Fair Dealing

■ There is no implied covenant of good faith and fair dealing in a CBA, such as this one, that actually gives the employee even greater protection by allowing termination only for just cause. *See, e.g., Bertrand v. Quincy Mkt. Cold Storage & Warehouse*, 728 F.2d 568, 571 (1st Cir. 1984). Silva cannot claim breach of a covenant that does not exist.

### 3. Count 3—M.G.L. c. 151B Claim

Mass. Gen. Laws ch. 151B prohibits employment discrimination on various bases. Silva claims race and disability (hearing impairment and pregnancy) discrimination, plus retaliatory discharge, all under 151B.

To bring a civil claim under 151B, a plaintiff must first file an administrative complaint with the MCAD. *See, e.g., Lattimore v. Polaroid Corp.*, 99 F.3d 456, 464 (1st Cir.1996). The MCAD complaint limits the scope of the subsequent court complaint. The degree of that limitation is unclear, however.

Recent federal cases have confined 151B claims in civil actions to the content of the charge filed with the MCAD *and* claims reasonably within the scope of an MCAD investigation based on this claim. *See id.*

at 464–65 (applying both tests to examine MCAD complaint's limiting effect on 151B claim); *Edwin v. Blenwood Assocs., Inc.*, 9 F.Supp.2d 70, 73 (D.Mass.1998) (same).

Some recent Massachusetts state court decisions indicate, however, that a plaintiff cannot bring a discrimination claim in court unless the MCAD complaint explicitly stated and described the type of discrimination alleged. *See, e.g., Riebold v. Eastern Casualty Ins. Co.*, No. 9700306, 1997 WL 311523, at *4 (Mass. Supp. June 4, 1997) (barring civil sex discrimination where plaintiff checked box marked "sex" on MCAD complaint, but did not give particulars of alleged discrimination, as required by statute); *Belonni v. Reservoir Nursing Ctr.*, No. 907558, 1994 WL 879457, at *4 (Mass.Supp. Jan. 18, 1994) (barring handicap discrimination claim where MCAD complaint described some events that would be part of handicap claim, but failed to specify "handicap" as the type of discrimination). As the exhaustion requirement for a 151B claim is likely a question of state law, these stricter state law decisions draw into question the accuracy of the federal articulations of that requirement.

■ But, the question of the precise parameters of the 151B exhaustion requirement is irrelevant to Silva's race and retaliatory discharge claims. Because her race is nowhere mentioned in the MCAD complaint, even the more lenient "scope of the complaint" rule bars a 151B claim based on race. Her retaliatory discharge claim fails on 12(b)(6) grounds, as Silva alleges that the retaliation (firing) occurred *before* the only action that could give rise to the retaliation (filing of MCAD complaint).

The exhaustion issue is raised by Silva's claim of pregnancy discrimination. Although her MCAD complaint refers to her "disability (deafness)," one sentence in the narrative alleges that she had to perform difficult tasks and received insufficient medical help from her employer while she was pregnant. As a claim for pregnancy

discrimination falls within the "scope" of her MCAD complaint,[1] the exhaustion rule that the court adopts makes a difference.

Rather than address that unclear state law question at this time, the court DENIES, without prejudice, the motion to dismiss as to the 151B pregnancy discrimination claim. Defendants can reassert their argument, and the court will address it again if necessary, at the summary judgement stage.

### 4. Count 4—Title VII

█ Silva's Title VII claim, which does not allege a specific type of discrimination, fails because (1) her MCAD complaint, which alleged only disability discrimination, bars claims based on new types of discrimination, *see, e.g., Conroy v. Boston Edison Co.,* 758 F.Supp. 54, 59–60 (D.Mass.1991) (dismissing federal age discrimination claim where claimant only alleged race discrimination in MCAD complaint); and (2) Title VII does not cover the only claim that she preserved—disability discrimination. 42 U.S.C. § 2000e–2(a).

### 5. Count 5—Americans with Disabilities Act

█ Hit or Miss and Avon argue that Silva's MCAD complaint precludes a claim for pregnancy discrimination. As noted above, the federal exhaustion inquiry asks whether a pregnancy claim would "reasonably [have been] within the scope of an MCAD investigation" based on the MCAD complaint. *Blenwood* 9 F.Supp.2d at 73.

Silva's MCAD/EEOC complaint clearly states that she claimed discrimination on the basis of her "disability (deafness)." One of the nine sentences in the complaint also alleges that while Silva was pregnant, her employers made her perform difficult physical tasks and did not adequately respond to her medical needs.

Whether this sentence refers to facts that will support an ADA claim is unclear.[2] What is clear is that the sentence is enough to have put the MCAD and EEOC on notice that Silva possibly suffered discrimination as a result of her pregnancy. It is reasonable to presume, therefore, that their investigations would have included the allegations concerning the treatment Silva received while pregnant. The pregnancy claim is not precluded. *See Blenwood,* 9 F.Supp.2d at 75 ("[T]he 'scope of the charge' analysis focuses on the potential investigation that the administrative agency could have conducted based on the charge and not the actual investigation.").

### 6. Count 6—M.G.L. c.12, § 11I, Massachusetts Civil Rights Act

M.G.L c. 151B "is the exclusive state law remedy for employment discrimination complaints." *Woods v. Friction Materials, Inc.,* 30 F.3d 255, 264 (1st Cir.1994). Silva's M.G.L. c.12, § 11I claim, which alleges discrimination in employment, is therefore preempted.

### 7. Count 7—Defamation

█ "The Massachusetts Supreme Judicial Court has stated that defamation traditionally is a disfavored action, and that 'courts have applied a stricter standard to complaints for defamation by requiring defamation plaintiffs to plead the elements of their claims with specificity in order to survive a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).' " *Dorn v. Astra USA,* 975 F.Supp. 388, 394–95 (D.Mass. 1997) (citation omitted).

Silva's complaint alleges that Hit or Miss and Avon "communicated false and misleading information to third parties regarding Plaintiff," and that "[s]ubsequent

---

1. *See* discussion *infra* Part 5.

2. *See Darian v. University of Massachusetts Boston,* 980 F.Supp. 77, 85 (D.Mass.1997) (stating that "[b]y its terms, though pregnancy per se is not covered by the ADA, the Act does not necessarily exclude all pregnancy-related conditions and complications").

to the job termination, based on a false charge of theft, Silva had much difficulty in securing any comparable work." Complaint ¶¶ 40, 16.

These vague, general allegations do not state claim for defamation, as they do not provide "the precise wording of at least one sentence of the alleged defamatory statement(s)." *Dorn*, 975 F.Supp. at 396 (listing pleading requirements); *see also Phantom Touring, Inc. v. Affiliated Publications*, 953 F.2d 724, 728 (1st Cir.1992) ("In our view, a defendant is entitled to knowledge of the precise language challenged as defamatory....") ; *Acciavatti v. Professional Servs. Group, Inc.*, 982 F.Supp. 69, 77–78 (D.Mass.1997) (dismissing as "factually deficient" defamation claim which alleged that the defendants "caused false and defamatory statements about [plaintiff] to be published to third parties, thereby injuring his reputation").

Given the chance, however, Silva may be able to plead defamation with sufficient particularity. The court, therefore, ALLOWS dismissal of this claim, without prejudice to refile.

### 8. Count 10—negligent Infliction of Emotional Distress

■ The Massachusetts Workers' Compensation Act ("MWCA"), M.G.L.c. 152, "bars employees from suing their employer for '[a[ny] personal injuries arising out of or in the course of employment.' " *Acciavatti*, 982 F.Supp. at 77 (citation omitted). As this bar "extends to claims for ... negligent ... infliction of emotional distress," *id.*, Silva's claim fails.

### 9. Loss of Consortium Claim

■ The loss of consortium claim fails in most respects. The same state law that preempts Silva's tort claim for negligent infliction of emotional distress preempts an ancillary claim for loss of consortium. *See Hamilton v. Baystate Med. Educ. & Research Found.*, 866 F.Supp. 51, 57 (D.Mass.1994) (holding that MWCA explicitly precludes common law actions brought by others for the loss of the injured worker's consortium).

■ Silva's preempted contract claim does not generate a loss of consortium claim because, in Massachusetts, loss of consortium claims only arise from underlying torts. *See, e.g., Tauriac v. Polaroid Corp.*, 716 F.Supp. 672, 673 (D.Mass.1989) ("In Massachusetts, a consortium claim may be brought only when the claimant's spouse has a valid tort claim.").

■ Similarly, Silva's still-viable federal discrimination claims do not generate loss of consortium claims. *See Miller v. CBC Cos., Inc.*, 908 F.Supp. 1054, 1069 (D.N.H.1995) ("[A]n ADA claim ... cannot support an ancillary claim for loss of consortium."); *Tauriac*, 716 F.Supp. at 673–74 (holding that neither federal nor Massachusetts state civil rights claims give rise to ancillary loss of consortium claims).

Whether Silva's state law discrimination claims give rise to a loss of consortium claim is unclear. As noted above, the *Tauriac* court predicted that Massachusetts state courts would follow the federal example, and find that no consortium claim derives from a discrimination claim. Since *Tauriac*, however, the Appeals Court of Massachusetts has hinted that the state law might diverge from federal on this question. *See Zhang v. Massachusetts Inst. of Tech.*, 46 Mass.App.Ct. 597, 708 N.E.2d 128, 134 (1999) (noting Supreme Judicial Court decision that observed, in another context, that "gender discrimination 'has historical connections to common law tort and contract claims' ").

Given the unclear state law issue, the court ALLOWS the motion to dismiss on the loss of consortium claim, except as it relates to the state law discrimination claims. Should Silva's state law discrimination claims survive a motion for summary judgement, Defendants may again raise and the court will then resolve the state law issue.

### B. Union's Summary Judgement Motion

Defendant Union filed an unopposed motion for summary judgement in January 1998. The court issued an order denying the motion in March 1999. That was a mistake. The court, therefore, VACATES the prior denial of Union's motion, and ALLOWS the motion for summary judgement.

AN ORDER SHALL ISSUE.