# United States Court of Appeals
## For the First Circuit

No. 00-1483

OLGA ANDREU MEGWINOFF,

Plaintiff, Appellant,

v.

BANCO BILBAO VIZCAYA,

Defendant, Appellee.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

[Hon. Hector M. Laffitte, Chief U.S. District Judge]

Before

Torruella, Chief Judge,
Lynch and Lipez, Circuit Judges.

Jane A. Becker-Whitaker for appellant.
Pedro J. Manzano-Yates, with whom Rebecca Paez-Rodriguez and
Fiddler Gonzalez & Rodriguez, LLP, were on brief for appellee.

December 1, 2000

**LYNCH, Circuit Judge**. Olga Andreu Megwinoff worked for Banco Bilbao Vizcaya from 1992 to 1997. It is undisputed that there was an incident of sexual harassment in her early years there. Her present lawsuit alleges that since then she was discriminated against as an older female employee and that as her health deteriorated BBV failed to make reasonable accommodations. Her health continued to deteriorate and she contracted cancer. She left on sick leave on September 24, 1996 and never returned to work. Puerto Rican law requires that employers under such circumstances hold open positions for a year. See 11 L.P.R.A. § 203(q)(1). BBV terminated her employment shortly after the year ended, on November 19, 1997, saying it did so because the year had expired.

The difficulty for Andreu is that she did not file a charge of discrimination until December 5, 1997, some 14 months after she last worked at BBV. The district court, on BBV's motion for summary judgment, agreed with the employer that her ADEA, ADA, and Title VII claims were not timely filed and dismissed the action. Our review of the grant of summary judgment is de novo. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 47 (1st Cir. 1999), cert. denied, -- U.S. --, 120 S. Ct. 1174 (2000).

Andreu attempts to save her case from dismissal for untimeliness by arguing that the equitable exception to the limitations period called the continuing violation doctrine applies. This court

has recognized two branches of the continuing violation doctrine: serial violations and systemic violations. <u>Pilgrim</u> v. <u>Trustees of Tufts College</u>, 118 F.3d 864, 869 (1st Cir. 1997). Serial violations are described as "compris[ing] a number of discriminatory acts emanating from the same discriminatory animus, each of which constitutes a separate wrong actionable under Title VII." <u>Id.</u> (internal quotation marks omitted). The series must contain a discriminatory act occurring within the limitations period for the plaintiff to reach back to include those otherwise untimely acts in her claim. <u>See</u> <u>Provencher</u> v. <u>CVS Pharmacy</u>, 145 F.3d 5, 14 (1st Cir. 1998).

In contrast, a systemic violation "requires no identifiable act of discrimination in the limitations period and refers to general practices or policies, such as hiring, promotion, training, and compensation." <u>Id.</u> If the "policy or practice itself continues into the limitations period," a plaintiff will be "deemed to have filed a timely complaint" under the systemic continuing violation theory. <u>Pilgrim</u>, 118 F.3d at 869. Andreu uses the serial violation doctrine for her gender and disability discrimination claims. She relies on the systemic violation doctrine for her age discrimination claim.

The only violation within the limitations period alleged to support Andreu's claim under the serial violation doctrine was the termination of Andreu's employment after a year of being out on sick

leave. BBV has articulated a legitimate, non-discriminatory rationale for the termination -- the year required by Puerto Rican law was up. (Andreu made no request to extend the sick leave as an accommodation.).

The only evidence plaintiff offers that the termination of employment was discriminatory is a statement made by BBV's General Counsel to plaintiff's brother. The statement, which was made on or about May 7, 1997, was: "if your sister comes in in the morning, tomorrow morning through the door of this bank, she has a job with us." This means, plaintiff says, that she had an open promise by the General Counsel that she could come back whenever she was ready. From the fact that he did not keep his promise, the jury could infer that the reason given for the termination of her employment was a pretext. Further, a jury could infer from this same breach of promise that the real reason was gender and disability based discrimination. Reeves v. Sanderson Plumbing Products, Inc., -- U.S. --, 120 S. Ct. 2097, 2109 (2000) ("[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated."). And from this, Andreu concludes, she has alleged an act of discrimination within the limitations period.

The argument stretches inferences well beyond reasonable bounds. What BBV's General Counsel said, during the one year period, was that if Andreu came back tomorrow she could have her job back.

-4-

That is what Puerto Rican law required.  It is not reasonable to infer it was a promise to hold the door open beyond the year.  Nor is it reasonable to infer discriminatory intent from Andreu's claim that the promise was not kept.  Because no act of discrimination was alleged within the limitations period, the argument based on the serial violation branch of the continuing violation doctrine fails.

In contrast to serial violations, this court has said that the systemic violation doctrine need not involve an identifiable, discrete act of discrimination occurring within the limitation period, see Mack v. Great Atl. & Pac. Tea Co., Inc., 871 F.2d 179, 183 (1st Cir. 1989), although it has a similar requirement: the systemic pattern or practice must continue into the charge period, see Lawton v. State Mut. Life Assurance Co. of Am., 101 F.3d 218, 222 (1st Cir. 1996).  "A systemic violation has its roots in a discriminatory policy or practice; so long as the policy or practice itself continues into the limitation period, a challenger may be deemed to have filed a timely complaint."  Jensen v. Frank, 912 F.2d 517, 523 (1st Cir. 1990).

Plaintiff relies on five or six incidents which she says establish a pattern of age discrimination that can be said to be systemic.  We outline them briefly and conclude this is not the stuff of which systemic violations are made.

First, there is a phantom document, which has never been found but was said by one deponent to have existed.  Deponent Colon, a

-5-

BBV officer, testified that at some unspecified time BBV's General Counsel wrote a memorandum about ways in which BBV was not in compliance with various anti-discrimination laws. The supposed author of the memorandum was deposed but never said he had prepared such a memorandum. Colon also gave her opinion that BBV was looking for "new blood," and gave as an example an older worker who was replaced by a younger worker, although Andreu provides no evidence about the circumstances surrounding that substitution that would demonstrate it was motivated by a discriminatory policy. Another employee spoke of the need to "rejuvenate" the staff in a Spanish bank with which BBV had merged, words Andreu interprets as evidence of a policy by BBV of lowering the age of its workforce. Next, in response to a hypothetical question, an official in BBV's Spanish parent bank expressed a preference, albeit indirectly, for employing younger women. Andreu charges that BBV had a policy of refusing to train workers over forty years old for management positions and refers to a list of employees sent to training, all of whom were under forty, although Andreu herself was never denied training. BBV's in house counsel, Rodriguez, gave his opinion that Andreu's transfer in 1994 was based on age considerations, although he was not involved in that employment decision and admitted that it did not reflect an overall BBV policy of workforce age reduction. Finally, the Human Resources Manager, Perez, referred to Andreu's respiratory ailments as similar to Perez's own "ailments of

age," a phrase which Andreu interprets as the "whinings of an old woman."

Andreu's attempt to recast her unsuccessful serial violation claim into a systemic violation claim fails. By definition, a series of discrete discriminatory acts motivated by a discriminatory animus cannot be a systemic violation. Otherwise, the distinction between systemic and serial violations could not be maintained. Systemic violations are said to arise from discriminatory policies (or what is a de facto policy in the form of a consistent, recurring practice). Systemic violations have been recognized rarely, usually in instances of a discriminatory promotion, hiring, training, or compensation system where direct evidence, statistics, or other evidence demonstrate the discriminatory effects of that policy. See, e.g., Johnson v. General Electric Co., 840 F.2d 132, 136-37 & n. 5 (1st Cir. 1988) (recognizing that an alleged unfair review process leading to denial of promotion would be sufficient to show ongoing policy under continuing violation doctrine); Clark v. Olinkraft, Inc., 556 F.2d 1219, 1221-22 (5th Cir. 1977) (challenge to entire promotion and pay system as discriminatory constituted continuing unlawful employment practice).

Thus, Andreu's assertion that BBV had a general policy of reducing the age of its workforce combined with a list of alleged discriminatory acts as evidence of that discriminatory employment policy is not sufficient to sustain a systemic continuing violation

claim.  See Mack, 871 F.2d at 184 ("[G]eneral references to some vague, undefined policy of discrimination are not . . . sufficient to make out a . . . showing that a discernible discriminatory policy was in effect.")  Moreover, much of Andreu's "direct evidence" of a discriminatory policy consists of allegations unsupported by citations to the record.[1]  Absent "any probative evidence of an overarching policy or practice of discrimination," the district court's grant of summary judgment was appropriate.  Jensen, 912 F.2d at 523.

Affirmed.  Costs to BBV.

---

[1]    There is a great amount of furor in the briefs about the discovery process, the difficulty of submitting supporting summary judgment briefs on the due dates with citations to depositions not yet transcribed, later filings with belated record cites and the like.  We are convinced that the district court did review plaintiff's supplemental filings and so put aside the procedural wrangling.  We note that plaintiff's kitchen sink approach to the requirement of providing citations to the record made the task of the district court and this court much more difficult and that such an approach could lead to a justifiable refusal by the court to entertain such filings.  See Stepanischen v. Merchants Despatch Transp. Corp., 772 F.2d 922, 931 (1st Cir. 1983) (party's failure to make specific references to record, when asked to do so by the court, may be grounds for judgment against that party).