# United States Court of Appeals
## For the First Circuit

No. 20-1124

HECTOR M. JENKINS,

Plaintiff, Appellant,

v.

HOUSING COURT DEPARTMENT, City of Boston Division,
a Section of the Trial Court of the
Commonwealth of Massachusetts,

Defendant, Appellee,

JEFFREY WINIK, First Justice of The Boston Housing Court;
MICHAEL NEVILLE, Chief Housing Specialist of the Boston Housing
Court; PAUL BURKE, Deputy Court Administrator of the
Massachusetts Housing Courts; PAULA CAREY, Chief Justice of The
Massachusetts Trial Courts; HARRY SPENCE, Court Administrator of
the Massachusetts Trial Courts; MARK CONLON, Human Resources
Director of the Massachusetts Trial Courts; EAMONN GILL, Labor
Counsel, Human Resources Department of the Massachusetts Trial
Courts; ELIZABETH DAY, Assistant Labor Counsel, HR Department of
the Massachusetts Trial Courts; ANTOINETTE RODNEY-CELESTINE,
Administrative Attorney, HR Department of Trial Courts; TIMOTHY
SULLIVAN, Chief Justice of the Massachusetts Housing Courts;
MAURA HEALEY, Attorney General,

Defendants.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Patti B. Saris, U.S. District Judge]

---

Before

Lynch, Lipez, and Barron,
Circuit Judges.

---

Robert J. Shapiro for appellant.

Michelle Liszt Sandals, Assistant Attorney General, Massachusetts Attorney General's Office, with whom Howard Meshnick, Assistant Attorney General, Massachusetts Attorney General's Office was on brief, for appellee.

October 18, 2021

BARRON, **Circuit Judge**.  Hector Jenkins was a Housing Specialist Department officer and mediator in the Boston Housing Court for over twenty-three years before he was fired from his job there in July 2016.  He thereafter filed suit against a number of defendants in the District of Massachusetts in which he alleged that his termination violated 42 U.S.C. § 1983 and Titles VI and VII of the Civil Rights Act of 1964.

The District Court dismissed Jenkins's § 1983 and Title VI claims, and Jenkins does not contest those rulings here.  He challenges on appeal only the District Court's grant of summary judgment to the Housing Court Department ("Trial Court") on his Title VII retaliation claim, its dismissal of his Title VII hostile work environment claim for a failure to exhaust administrative remedies, and its denial of his leave to amend his complaint to add a claim of disability discrimination in violation of § 504 of the Rehabilitation Act.  Finding no merit to Jenkins's challenges, we affirm the rulings below.

**I.**

Jenkins, who is Black and immigrated to the United States from Costa Rica, began working as a Housing Specialist in the Boston Housing Court in 1993.  In 1995, Jeffrey Winik was appointed an associate justice of the Boston Housing Court.  Around 2004, the Chief Housing Specialist -- Jenkins's immediate supervisor -- resigned.  By that time, Winik had become the First Justice of the

- 3 -

Boston Housing Court and was thus responsible for appointing the Chief Housing Specialist.

Judge Winik ultimately appointed Michael Neville, a white man, to the position. Jenkins complained to superiors, court administrators, and others that the hiring process "violated court rules and constituted illegal patronage." Jenkins was administratively banned from Winik's courtroom and threatened with suspension. Jenkins also contends that Neville, who was aware of Jenkins's repeated complaints about his hiring, treated Jenkins harshly, including yelling at Jenkins, calling him "crazy," and making comments that Jenkins understood as racist, such as "you can complain to your boy Obama if you want" and "we don't want you here," and referring to Jenkins and other minority individuals as "lazy."

In 2015, Jenkins was placed on administrative leave after sending multiple long emails to his co-workers -- at least ten emails in the span of a month. These emails largely concerned the 2005 appointment of Neville as Chief Housing Specialist. They also repeated Jenkins's longstanding complaints about the Trial Court's treatment of litigants.

Upon Jenkins's returning to work after his period on leave had ended, he was reminded of the proper channels through which he could communicate any complaints. He was also informed that his complaints would be investigated.

The investigation took eight months, during which Jenkins continued to voice his complaints by sending long emails to Trial Court staff. The investigation culminated in a meeting to share the findings of the investigation into Jenkins's complaints. Jenkins and the Trial Court disagree about what transpired at the meeting.

Jenkins contends that instead of discussing the legitimacy of his complaints, the meeting focused on disciplining him for making the complaints in the first place. Other attendees at the meeting asserted that Jenkins behaved in an unprofessional manner, talking in a loud voice over others and refusing to listen. They reported that Jenkins "once again acted confrontational, abusive and threatening to the point that they were concerned for their safety."

After that meeting, Jenkins was informed that his "complaint was investigated, findings were issued, and the matter [was] now closed." He was also warned that if he continued to make complaints via email he could be subject to disciplinary action.

Jenkins continued to send emails detailing his complaints, and he was put on administrative leave for a second time on March 17, 2016. This period of administrative leave ended after a disciplinary hearing was held in June 2016.

The hearing was set to address alleged misconduct by Jenkins, including, among other allegations, "insubordination and failure to comply with a reasonable order." The hearing was held on June 21, 2016, and resulted in the Deputy Trial Court Administrator, Paul Burke, recommending that Jenkins "be terminated from employment in the Trial Court at the earliest possible time." Chief Justice Sullivan adopted the recommendation and Jenkins's employment ended on July 22, 2016.

Soon after Jenkins was fired in 2016, he filed this lawsuit pro se in the District of Massachusetts. His First Amended Complaint ("FAC") included three counts: a 42 U.S.C. § 1983 claim for depriving him "of a professional right," namely the ability to "perform[] his duties free from obstruction and intimidation"; a retaliation claim under Title VII, 42 U.S.C. § 2000e-3, predicated solely on the fact of his termination from his job at the Trial Court; and a discrimination claim under Title VI, 42 U.S.C. § 2000d. The FAC named as defendants several Massachusetts Housing Court judges and employees, including Jeffery Winik, Michael Neville, Paul Burke, Timothy Sullivan, Mark Colon, Eamonn Gill, Elizabeth Day, Antoinette Rodney-Celestine, Harry Spence, and Paula Carey, as well as the Trial Court itself and Massachusetts Attorney General Maura Healey.

On December 16, 2016, the Trial Court filed a motion to dismiss on the grounds that the Eleventh Amendment barred Jenkins's

§ 1983 claim, that Jenkins had failed to plead sufficient facts to support his Title VI claim, and that he had failed to exhaust his Title VII claims with the U.S. Equal Employment Opportunity Commission ("EEOC") before filing suit. The individual defendants also filed a motion to dismiss Jenkins's claims on the same day.

Jenkins thereafter filed, on December 21, 2016, a charge of unlawful employment discrimination and retaliation with the EEOC. He subsequently filed an opposition to the defendants' motion to dismiss on December 29, 2016, in which he explained that he had filed an EEOC charge and attached it to his opposition motion. Jenkins also filed another EEOC charge the following day complaining of disability discrimination, and he received right-to-sue letters from the EEOC for both charges on January 25, 2017.

On August 1, 2016, the District Court assigned this case to a magistrate judge. The Magistrate Judge soon thereafter issued a report and recommendation that addressed the defendants' motions to dismiss Jenkins's claims.

The Magistrate Judge's report recommended that both motions to dismiss be granted in their entirety. The District Court adopted the Magistrate Judge's report and dismissed Jenkins's counts with prejudice with the exception of the Title VII claim, which the District Court granted Jenkins leave to amend.

On June 13, 2017, Jenkins filed his Second Amended Complaint ("SAC"). The SAC claimed that, in violation of Title

VII § 2000e-3, Jenkins had been subject to a hostile work environment at the Trial Court because of his race and national origin and that he had been retaliated against for complaining about racial and national origin discrimination. The Trial Court moved to strike the SAC, which the Magistrate Judge recommended granting in its report and recommendation.

The District Court struck Jenkins's Title VII hostile work environment claim in response to the motion but denied the motion with respect to his Title VII retaliation claim. The District Court struck the hostile work environment claim on the ground that Jenkins had failed to exhaust his administrative remedies. The Trial Court and Jenkins both filed motions for reconsideration, which the District Court denied.

On September 11, 2018, Jenkins sought leave to amend the SAC to add a count alleging disability discrimination under the Americans With Disabilities Act ("ADA") and § 504 of the Rehabilitation Act. Jenkins appended to that motion the ADA charge that he had filed with the EEOC on December 30, 2016 and for which he had received a right-to-sue letter from the EEOC in January 2017.

The District Court denied the motion on January 9, 2019, after adopting the Magistrate Judge's finding that the proposed amendment was both untimely and futile. That left only Jenkins's Title VII retaliation claim.

The Trial Court moved for summary judgment in its favor on that claim. The Magistrate Judge recommended that the motion be granted, on the grounds that Jenkins had failed to create a genuine issue of disputed fact as to whether he had made out a prima facie case of retaliation and that even if he had, he failed to point to facts that would permit a juror reasonably to find that the Trial Court's proffered legitimate, non-retaliatory reason for Jenkins's termination was a pretext for retaliation.

The District Court adopted the report and recommendation on January 10, 2020. It thus granted summary judgment for the Trial Court on Jenkins's retaliation claim. Jenkins then filed this timely appeal.

## II.

We begin with Jenkins's contention that the District Court erred in granting summary judgment to the Trial Court on his Title VII retaliation claim. We review the "entry of summary judgment de novo and affirm if the record, viewed in the light most favorable to the appellant, reveals no genuine issue of material fact and demonstrates that the movant is entitled to judgment as a matter of law." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 70 (1st Cir. 2011).

The parties agree that we must assess Jenkins's retaliation claim under the McDonnell Douglas burden-shifting framework. See Ponte v. Steelcase Inc., 741 F.3d 310, 321 (1st

Cir. 2014) (explaining that we evaluate "[r]etaliatory termination claims based on circumstantial evidence" under McDonnell Douglas); see also McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Under that framework, a plaintiff bringing a retaliation claim must first show "that: (1) he engaged in protected conduct under Title VII; (2) he experienced an adverse employment action; and (3) a causal connection exists between the protected conduct and the adverse employment action." Sánchez-Rodríguez v. AT & T Mobility P.R., Inc., 673 F.3d 1, 8 (1st Cir. 2012) (internal quotation marks omitted).

The parties dispute whether Jenkins has made enough of a showing of a prima facie case to survive summary judgment. But, even assuming that he has, the Trial Court argues, and we agree, he has not made the necessary showing of pretext to survive summary judgment.

Jenkins bases his Title VII retaliation claim on his ultimate termination and not on any other act that was taken against him for his protected activity.[1] Consequently, the Trial Court bears the burden of production to respond to Jenkins's prima

---

[1] A retaliation claim need not be predicated on a termination, however. "[T]he anti-retaliation provisions of Title VII also cover employer actions that are materially adverse, specifically those that are harmful enough to dissuade a reasonable employee from complaining about discrimination." Fournier v. Massachusetts, No. 20-2134, 2021 WL 4191942, at *3 (1st Cir. Sept. 15, 2021) (unpublished).

- 10 -

facie case by putting forward a legitimate non-retaliatory basis for firing Jenkins. See Mesnick v. Gen. Electric Co., 950 F.2d 816, 823 (1st Cir. 1991) (describing the burden as one of "production" not "persuasion"). The Trial Court met that burden by asserting that it fired Jenkins because of his insubordinate behavior, which included engaging in the precise conduct that he had been told to cease -- after repeated warnings that failure to do so could result in disciplinary actions including termination -- and refusing to accept direction from many of his supervisors.

Thus, to defeat the Trial Court's motion for summary judgment in its favor, Jenkins must point to "specific facts that would demonstrate any sham or pretext intended to cover up defendants' retaliatory motive" for its decision to fire him. Calero-Cerezo v. U.S. Dep't of Just., 355 F.3d 6, 26 (1st Cir. 2004). Jenkins argues that he has done so because the record supportably shows that the Trial Court's proffered reason for his termination -- that he complained too often, too loudly, at too great a length, and in language considered "inappropriate" -- "inherently creates a dispute of fact as to its actual motive" because some of those complaints contained complaints about racial discrimination. We do not agree.

We do not dispute that an employer may not disguise retaliation for protected conduct by portraying it as merely discipline for the manner in which such conduct was undertaken.

But, at the same time, an individual is not immune from being disciplined on the basis of the manner in which he makes a complaint of workplace discrimination. See Mesnick, 950 F.2d at 828-29 (stating that "while statutes . . . bar retaliation for exercising rights guaranteed by law, they do 'not clothe the complainant with immunity for past and present inadequacies, unsatisfactory performance, and uncivil conduct in dealing with subordinates and with his peers'" (quoting Jackson v. St. Joseph State Hosp., 840 F.2d 1387, 1391 (8th Cir. 1988))). Here, the record precludes a reasonable juror from finding that Jenkins was fired for engaging in protected conduct rather than, as the Trial Court contended, on the basis of the insubordinate manner in which he repeatedly lodged his complaints.

The record indisputably shows that a focus of the June 21, 2016, disciplinary hearing, which preceded Jenkins's termination, was his "insubordination and failure to comply with a reasonable order" after he was "instructed on numerous occasions to cease and desist from sending emails to Trial Court employees concerning the issues [he] raised [previously]" but he nevertheless "continued to email Trial Court employees." Moreover, the record establishes that during that hearing, the Trial Court administrator, Paul Burke, assigned to investigate his complaints

> asked [Jenkins] if there was any way he could put all these issues behind him and return to work as a productive member of the staff. His immediate answer was an emphatic no. Upon reflection however, he did state that he would be willing to return up on the resignation of all senior Trial Court management who have not responded to his complaints in a manner that he deems satisfactory.

In addition, the record shows that, after concluding that Jenkins had "engaged in all the misconduct" he was accused of -- including "insubordination and failure to comply with a reasonable order" -- Burke's recommendation was as follows:

> I find that Mr. Jenkins cannot return to work as a productive member of the staff. He is unwilling to accept any reasonable direction or instruction from any member of management who does not sympathize with his fixation. He would continue to be a disruptive force amongst the staff. He has received multiple written warnings over the past year and has been placed on administrative leave twice due to his abusive nature with no indication of complying with acceptable behavior.

There is nothing in the recommendation to cast doubt on the Trial Court's assertion that it fired Jenkins for reasons independent of his protected conduct and having only to do with his insubordination. Indeed, there is no reference in the report to the content of any of his complaints.

The record also provides no basis on which a juror reasonably could find that the recommendation could not have meant what it said. To the contrary, the record indisputably shows that, beginning in at least 2015, Jenkins was specifically told that the

- 13 -

manner in which he was lodging complaints -- which involved his sending lengthy emails accusing Judge Winik, Judge Pierce and Neville of improper hiring practices and sharing his criticisms of Trial Court practices to the entire housing specialist staff -- was inconsistent with the "Housing Specialist Duties and Responsibilities," which he had previously received by email and which required Housing Specialists to "[c]ommunicate in a professional manner with all employees, managers, judges, clerk and [the] public."  In addition, the record incontrovertibly shows that Jenkins was told that he had the right to file complaints and to make accusations against Winik and Neville, and could do so by "fil[ing] a complaint with [his] supervisor . . . , [his] supervisor's supervisor," or Human Resources, but "repeated letters and/or emails airing the same complaints to multiple parties, to include the Chief Justice of the Supreme Judicial Court and/or the Chief Justice of the Trial Court, are neither professional nor appropriate."

Nor is there any dispute that the record establishes that, despite this admonition, Jenkins subsequently sent additional letters and emails of just the sort he had been told to stop sending.  Indeed, the record shows that Neville issued a written warning in response to this continuing conduct, which described the subsequent emails as being "similar [in] tone and content to the previous emails," found the conduct

"insubordinate," and reminded Jenkins of the "expectations for appropriate behavior."

The record further shows conclusively that the Trial Court responded to Jenkins's subsequent communications by informing him that the Trial Court was investigating his claims and that he could "expect a substantive response to the issues [he] raised" but that "the expectations" previously communicated to him about the proper way to express his complaints "still stand." The record shows in similarly indisputable fashion that the Human Resources attorney investigating Jenkins allegations, Antoinette Rodney-Celestine, met with him to discuss them and that, after she received multiple emails from Jenkins, Rodney-Celestine requested that Jenkins stop emailing her so she could focus on the investigation. Yet, the record also shows without dispute that, despite this request, Jenkins sent subsequent emails to her and others raising similar complaints to the ones that he had expressed in the past about Neville's promotion to Chief Housing Specialist.

That Burke's recommendation was rooted in the concerns that he identified about the way in which Jenkins had been raising his concerns rather than in the substance of them draws still more support from the fact that the record shows without dispute that, in the wake of Jenkins's continued correspondence, Rodney-Celestine sent an email in which she wrote, "[c]onsider this email a directive to you to cease and desist from sending or re-sending

any further emails and/or any other written or verbal communication to any Trial Court employee concerning any of the claims raised by you, while this investigation is pending" (emphasis omitted).

There is no dispute, however, that even then the emails did not cease. Indeed, Jenkins does not dispute that the record shows that, at the close of the investigation, Rodney-Celestine told Jenkins that he "ha[d] the right to initiate litigation" but that he was not to send any further emails concerning the claims raised in his complaint "to any employee of the Judiciary" and that Jenkins thereafter was placed on administrative leave pending a disciplinary hearing concerning his "course of misconduct."

Thus, we do not see any basis in the record on which a reasonable juror could find that the Trial Court's asserted reasons for terminating Jenkins were pretextual. We emphasize in this regard that Jenkins does not identify, for example, any comparator employee of a different race or national origin who was treated differently for similar conduct. See Thomas v. Eastman Kodak Co., 183 F.3d 38, 62 (1st Cir. 1999). Nor does he credibly dispute that there was an established policy regarding how complaints must be raised that the Trial Court reasonably could have determined had been violated. See, e.g., St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993); Martinez-Burgos v. Guayama Corp., 656 F.3d 7, 13-14 (1st Cir. 2011). Nor, finally, does he identify record evidence that could suffice to supply a reasonable basis for a

juror to conclude that the Trial Court's assertedly neutral reason for acting as it did was so implausible, given his actual conduct in registering complaints over the years, that it may be considered a sham. See Hodgens v. Gen. Dynamics Corp., 144 F.3d 151, 168 (1st Cir. 1998).

To be sure, an employer's inaction in the face of serious allegations of race discrimination in the workplace may invite the employee to persist in trying to have them addressed, and the failure of a court to address such discrimination within its workplace would be concerning. We thus do not dispute that a reasonable juror could take that reality into account in assessing whether to credit this employer's assertion that it took an adverse action (here, termination being the only one alleged) in response to insubordination rather than to the protected conduct. But, on this record, we can see no basis for concluding that a finding of pretext would be anything other than wholly speculative. Cf. McCarthy v. City of Newburyport, 252 F. App'x 328, 332 (1st Cir. 2007) (finding that "the record evidence compelled the conclusion that the plaintiff . . . [was fired] for nondiscriminatory reasons," namely the "repeated failure to comply" with directives from his employer). We thus affirm the District Court's grant of summary judgment for the Trial Court as to the retaliation claim.

We turn next to Jenkins's argument that the District Court erred in dismissing his hostile work environment claim under Title VII.  Here, too, the District Court adopted the Magistrate Judge's report and recommendation with respect to the Trial Court's motion to dismiss, finding "no indication that [the claim] was exhausted at the administrative level."

There is no dispute that Jenkins filed a charge with the EEOC.  But, the purposes of the administrative exhaustion requirement are to ensure that the employer has "prompt notice of the claim" and to "create[]an opportunity for early conciliation." Lattimore v. Polaroid Corp., 99 F.3d 456, 464 (1st Cir. 1996); see also Thornton v. United Parcel Serv., Inc., 587 F.3d 27, 31 (1st Cir. 2009) (noting that the "submission of an administrative claim . . . gives notice to both the employer and the agency of an alleged violation and affords an opportunity to swiftly and informally take any corrective action necessary to reconcile the violation").  Thus, the filing of such a charge alone "does not open the courthouse door to all claims of discrimination." Velazquez-Ortiz v. Vilsack, 657 F.3d 64, 71 (1st Cir. 2011).  We therefore must determine whether what Jenkins presented to the EEOC was sufficient to alert the agency of the hostile work environment claim.  Id.

To do that, we must review not only what the specific language of the agency charge states but also what the EEOC's investigation based on that charge "could reasonably be expected to uncover." Davis v. Lucent Techs., Inc., 251 F.3d 227, 233 (1st Cir. 2004). In doing so, though, we must construe Jenkins's pro se administrative charge liberally "in order to afford [him] the benefit of any reasonable doubt." Lattimore, 99 F.3d at 464. That review is de novo. See Vilsack, 657 F.3d at 70.

Jenkins does not suggest that his second charge that he filed with the EEOC put it on notice that Jenkins was making a hostile work environment claim. Jenkins's sole contention is that the District Court erred in finding that he had not put the EEOC on notice of the hostile work environment claim because the District Court understood the FAC to make out a race-based hostile work environment claim and Jenkins had provided the EEOC with a copy of the FAC alongside his first EEOC charge.

We assume for present purposes that the FAC was provided to the EEOC.[2] The Trial Court argues in response, however, that even if it was, the FAC "would not have put the EEOC on notice to investigate anything about it." In support of this contention,

_____

[2] We note that the defendants dispute whether the EEOC ever received the FAC. But, we do not need to resolve that issue as we conclude that even if the EEOC was provided with the FAC, the FAC would not have put the EEOC on notice to investigate Jenkins's hostile work environment claim.

the Trial Court points out that "it is not within the EEOC's jurisdiction to concurrently investigate Title VII claims pending in a District Court." Because a Title VII claim must first be filed with the EEOC and the EEOC's investigation of that claim must be complete before a claimant can file a federal suit, the Trial Court argues, the EEOC "would have ignored" a hostile work environment claim made out in a complaint on the assumption that its portion of the Title VII process had ended.

Jenkins does not offer any response to the Trial Court's arguments in this regard in his reply brief. Nor does he explain in any of his briefs to us why his provision of the FAC alongside his first EEOC charge would have put the EEOC on notice of its need to investigate his hostile work environment claim. Instead, he asserts only that "[i]f the District Court understood the FAC made out a racially hostile environment claim, then the EEOC also must be presumed to have been on notice when [he] provided the federal agency with a copy of the FAC." But, that assertion fails to acknowledge the many possible reasons the EEOC might have had to overlook any allegations of a hostile work environment that Jenkins made out in the FAC -- the most obvious of which is that the text of the first EEOC charge styles itself as a retaliatory

termination claim and contains no suggestion that Jenkins was making out a racially hostile work environment.[3]

Thus, because Jenkins fails to develop an argument as to why the EEOC would have been alerted to its need to investigate his hostile work environment claim by him simply providing the EEOC with his FAC, we affirm the District Court's dismissal of Jenkins's hostile work environment claim. See United States v. Zannino, 895 F.2d 1, 17 (1st Cir. 1990) (holding that party's failure to develop argument in appellate brief results in waiver).

**IV.**

Jenkins's final challenge is to the District Court's denial of his motion for leave to amend his SAC to add claims alleging that the Trial Court discriminated against him because of his disability. We review a district court's denial of a motion seeking leave to amend for an abuse of discretion, "defer[ring] to the district court's hands-on judgment so long as the record

---

[3] At oral argument, Jenkins pointed us to Thornton v. United Parcel Serv., Inc., 587 F.3d 27 (1st Cir. 2009), and Powers v. Grinnell Corp., 915 F.2d 34 (1st Cir. 1990), as support for his assertion that, by providing a copy of the FAC to the EEOC, Jenkins put the EEOC on notice of his hostile work environment claim. But these cases merely explain that "[t]he scope of the civil complaint is accordingly limited by the charge filed with the EEOC and the investigation which can reasonably be expected to grow out of that charge." Thornton at 31 (quoting Powers, 915 F.2d at 38). Jenkins did not develop an argument, however, as to why in his case the EEOC would have discovered the basis for his hostile work environment claim in the course of investigating his retaliatory termination claim.

evinces an adequate reason for the denial." <u>Torres-Alamo</u> v. <u>Puerto Rico</u>, 502 F.3d 20, 25 (1st Cir. 2007).

While leave to amend should be "freely given when justice so requires," <u>id.</u> (quoting Fed. R. Civ. P. 15(a)), "a district court may deny leave to amend when the request is characterized by 'undue delay, bad faith, futility, [or] the absence of due diligence on the movant's part.'" <u>Nikitine</u> v. <u>Wilmington Tr. Co.</u>, 715 F.3d 388, 390 (1st Cir. 2013) (quoting <u>Palmer</u> v. <u>Champion Mortg.</u>, 465 F.3d 24, 30 (1st Cir. 2006)).

Here, the District Court adopted the Magistrate Judge's report and recommendation to deny Jenkins's motion for leave to amend without comment. The Magistrate Judge's report and recommendation first concluded that Jenkins's motion be denied because it "reflect[ed] undue delay and lack of diligence." It explained that although Jenkins had received a right-to-sue letter from the EEOC for his claims of disability discrimination on January 25, 2017, he did not seek to amend his complaint to add these claims until October 2018. Thus, the Magistrate Judge concluded that "[i]t [was] simply too late to add the claims now." In addition, the Magistrate Judge concluded that Jenkins's motion for leave to amend his complaint should be denied because the "proposed amendments would be futile." The Magistrate Judge explained that the addition of Jenkins's claim of disability discrimination under the ADA would have been futile because the

Trial Court "was part of the judicial branch of the Commonwealth" and thus his "ADA claims [were] barred by the Eleventh Amendment." The addition of a claim of disability discrimination under § 504 of the Rehabilitation Act would also have been futile, the Magistrate Judge reasoned, because the proposed claim did not contain "any allegation that [the] defendant . . . is the recipient of federal funding," which was "an element" of his claim under the Act, and because Jenkins "alleged various grounds for his termination" when the Act "requires an individual to have suffered discrimination 'solely by reason of . . . his disability.'"

Jenkins does not challenge the District Court's refusal to grant him leave to amend his complaint to add the ADA claim. He appeals only the denial of his motion to amend with respect to the Rehabilitation Act claim. He contends that both of the Magistrate Judge's reasons for recommending a denial of his motion to amend with respect to that claim were invalid, such that the District Court abused of discretion by adopting them. But, if either ground is sound, we must affirm the denial. Accordingly, we bypass Jenkins's challenge to the futility finding, because we conclude that the District Court did not abuse its discretion in determining that Jenkins acted with "undue delay and a lack of diligence" in amending his complaint to add the Rehabilitation Act claim.

"[W]hen 'a considerable period of time has passed between the filing of the complaint and the motion to amend, courts have placed the burden upon the movant to show some valid reason for his neglect and delay.'" Nikitine, 715 F.3d at 390-91 (quoting Hayes v. New Eng. Millwork Distribs., Inc., 602 F.2d 15, 19-20 (1st Cir. 1979)). Here, the record shows that Jenkins contemplated the possibility that the Trial Court had discriminated against him on the basis of his disability as early as December 30, 2016, when he filed a charge with the EEOC alleging such discrimination and that he subsequently received a right-to-sue letter from the EEOC for those claims on January 25, 2017. Yet, he did not seek to amend his complaint to add a claim of disability discrimination until October 2018 -- over a year and a half later. During that period, moreover, Jenkins amended his complaint -- he filed his SAC on June 13, 2017 -- but he did not take that opportunity to add these additional claims. As Jenkins provides no explanation for letting over a year pass before seeking leave to amend, we cannot say that the District Court erred in denying Jenkins's motion to amend his complaint. See, e.g., id. at 390 (affirming a district court's denial of a motion to amend after a six-month delay); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (same but finding undue delay after four months).

## V.

For the foregoing reasons, we **affirm** the District Court's grant of summary judgment for the Trial Court on the retaliation claim, its dismissal of the hostile work environment claim, and its denial of Jenkins's motion to amend his complaint to add disability discrimination counts.